IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| NEXUS DISPLAY TECHNOLOGIES LLC, | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:14-CV-762 |
| vs. | § § | LEAD CASE |
| DELL, INC., *et al.*, | § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Before the Court is Defendant Dell, Inc.'s ("Dell") Motion to Transfer (Docket No. 64). For the reasons stated herein, Dell's motion is **DENIED**.

**BACKGROUND**

On July 11, 2014, Plaintiff Nexus Display Technologies, LLC ("NDT") filed the above-styled action against Dell alleging its various monitors, desktop, and notebook computers (collectively, "Accused Products") infringe United States Patent Numbers 5,835,498 (" '498 Patent"), 7,143,328 (" '328 Patent"), 7,295,578 (" '578 Patent"), and 7,599,439 (" '439 Patent") (collectively, the "Asserted Patents"). On January 22, 2015, Dell filed its motion requesting transfer to the Northern District of California. Docket No. 64 at 1. In its reply brief, filed on April 23, 2015, Dell instead argues that the Central District of California is a more appropriate venue than the Northern District of California, but that either district is more convenient than the Eastern District of Texas. Docket No. 109 at 1–2. NDT is a Texas limited liability company, with its principal place of business in Plano, Texas. Docket No. 98 at 3. Dell is a Delaware corporation with its headquarters in Round Rock, Texas. Docket No. 64 at 7.

## LEGAL STANDARD

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The first inquiry when analyzing a case's eligibility for section 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").

Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53 (5th Cir. 1963); *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198. The public factors are: 1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *In re Volkswagen I*, 371 F.3d at 203; *In re Nintendo*, 589 F.3d at 1198.

The plaintiff's choice of venue is not a factor in this analysis. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*In re Volkswagen II*"). Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200.

Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen II*, 545 F.3d at 314–15.

## DISCUSSION

At the time Dell filed its motion, it moved to transfer this case from the Eastern District of Texas ("E.D. Tex.") to the Northern District of California ("N.D. Cal.") under 28 U.S.C. § 1404(a). Docket No. 64 at 1. In its reply brief, Dell requests to transfer this case to the Central District of California ("C.D. Cal."), and insists that either the C.D. Cal. or the N.D. Cal. are more appropriate than the E.D. Tex. Docket No. 98 at 2. As the Court is to consider the circumstances at the time the motion was filed, the following analysis will focus on Dell's request to transfer to the N.D. Cal.[1]

### I. Threshold – Eligibility for Transfer

Dell is organized under Delaware law and headquartered in Round Rock, Texas, within the Western District of Texas. *Id.* at 7. Dell contends that its commercial activity in the N.D. Cal.—selling the Accused Products—subjects it to personal jurisdiction in the N.D. Cal. *Id.* at 10. NDT does not dispute whether or not this case could have originally been brought in the N.D. Cal. Thus, the threshold inquiry is satisfied, and the Court turns to the public and private interest factors.

---

[1] In its reply brief, Dell does not fully analyze the venue factors with respect to its request to transfer venue to the C.D. Cal. The Court is not in a position to project its own reasons whether venue in the C.D. Cal. would be more proper than the E.D. Tex.

## II. Convenience

### A. Private Factors

#### i. *Relative Ease of Access to Sources of Proof*

This factor is a relevant part of the transfer analysis despite technological advances that make transporting large volumes of documents across the country more convenient. *In re Volkswgen II*, 545 F.3d at 316. Consequently, courts analyze the distance documents must be transported from their physical location to the trial venue, acting under the assumption that electronically stored documents are, in fact, physical. *See id.* In addition, courts presume that the bulk of all relevant evidence will come from the accused infringer. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Finally, parties must identify sources of proof with some specificity such that the court may determine whether transfer will increase the convenience of the parties. *J2 Global Commc'ns, Inc. v. Proctus IP Solutions, Inc.*, No. 6:08-CV-211, 2009 WL 440525, at *2 (E.D. Tex. Feb. 20, 2009).

Dell contends that the bulk of all relevant documents pertaining to infringement are located in California. Docket No. 64 at 11–12. Dell contends that as an Acacia Research Group subsidiary, NDT's documents on licensing, standing, and validity will come from Acacia's headquarters in Newport Beach, California. *Id.* at 11. Additionally, documents related to the prosecution of the Asserted Patents are located in the N.D. Cal. *Id.* Dell states that only limited information on the Accused Products are located at its headquarters in Round Rock, Texas. *Id.* at 12. Dell argues that NDT's only basis for infringement is the Accused Products' operative components' compliance with the DisplayPort standard. *Id.* Dell contends that those operative components are designed and sourced by third parties located in the N.D. Cal., and those documents are what should be considered the primary source of proof. *Id.*

NDT responds that, as the accused infringer, it is Dell's documents involving the Accused Products that are most important. Docket No. 98 at 3. NDT argues that documents relating to the Accused Products are more accessible to the E.D. Tex. than the N.D. Cal. because Dell is headquartered in Texas. *Id.* NDT contends that being a subsidiary of Acacia Research Group has little relevance to this litigation because there are 12 employees in Plano whose work involves business development, engineering, licensing, management, office management, and administrative functions. *Id.* at 4.

The Court is mindful that Dell asserts it does not have the bulk of information, but that several different third-party entities ("like NVIDIA, Intel, AMD, and VESA") are located in the N.D. Cal. and are in possession of the pertinent documents. Docket No. 64 at 12. While Dell alleges that these third-party entities have "technical documents" relating to operative components in the Accused Products, it does not identify which documents relating to the operative components would be attributed to a specific third-party. Although such evidence might be relevant, it cannot be the sole focus of the venue analysis because it is Dell's Accused Products that are subject to this litigation, not a group of third-parties' operative components. Indeed, it is the accused infringer and producer of the Accused Products, Dell, that most likely has the bulk of the information relating to infringement. Dell is headquartered in Round Rock, Texas, significantly closer to the E.D. Tex. than the N.D. Cal. Finally, NDT states its documents related to the Asserted Patents are located in Houston and Plano, Texas, and in Southern California. Docket No. 98-6 at ¶ 8 (Decl. of Marvin Key). Accordingly, this factor weighs against transfer.

### ii. *The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

This factor weighs in favor of transfer when more third-party witnesses reside within the transferee venue and when the transferee venue is said to have "absolute subpoena power" over these third-party witnesses. *In re Volkswagen II*, 545 F.3d at 316. "Absolute subpoena power" is subpoena power for both depositions and trial. *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Additionally, courts give more weight to those specifically identified witnesses and afford less weight to vague assertions that witnesses are likely located in a particular forum. *See Novelpoint Learning v. Leapfrog Enter.*, No. 6:10-CV-229, 2010 WL 5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses); *see also West Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-CV-688, 2011 WL 5117850, at *3 (E.D. Tex. Oct. 27, 2011).

The amended Rule 45 provides the presiding court with the power to issue nationwide deposition subpoenas and compel testimony so long as the trial, hearing, or deposition is to take place within 100 miles of the witness's residence or regular place of business. FED. R. CIV. P. 45(a)(2), 45(b)(2), 45(c)(1)(A); *see* Committee Notes on Rules—2013 Amendment ("The [2013] amendments recognize the court where the action is pending as the issuing court, permit nationwide service of subpoena and collect in a new subdivision (c) the previously scattered provisions regarding place of compliance."). The proffering party now has the option to depose the non-party witness near that witness's residence or regular place of business, and later present the witness's deposition testimony at trial without the involvement of a second district court. *See* FED. R. CIV. P. 32(a)(4) ("A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds…that the witness is more than 100 miles from the place of hearing or trial ….").

Dell contends it will be prejudiced if this case remains in the E.D. Tex. because it will not be able to compel non-party witnesses to appear for trial.[2] Docket No. 64 at 13. Dell argues it will be prejudiced by videotaped deposition testimony because a jury may "respond[] negatively to prolonged viewings, with little interaction from those present in the courtroom." Docket No. 64 at 13–14. Dell also contends NDT will suffer prejudice because NDT will be denied the ability to cross examine these third-party witnesses live. *Id.*

NDT responds that Dell failed to identify a single third-party witness by name in its motion. Docket No. 98 at 5. NDT contends that any Intel witness will assist Dell regardless of forum because of their indemnification agreement. *Id.* NDT argues that because of Dell and Intel's agreement, "subpoena power over Intel is unnecessary and irrelevant to the transfer analysis." *Id.* NDT further argues that it is rare for third-party witnesses to appear in a patent trial. *Id.*

Dell's motion only makes vague assertions that witnesses are likely located in the N.D. Cal. However, even if Dell had specifically identified witnesses in the N.D. Cal., as it did in its reply brief, under amended Rule 45(c)(1)(A), only in the N.D. Cal. may Dell secure its non-party witnesses to attend trial. Both the E.D. Tex. and the N.D. Cal., however, may instruct these witnesses to attend and subject them to being deposed. FED. R. CIV. P. 45(a)(2) and 45(c)(1)(A). Dell acknowledges the Fifth Circuit observed that a videotape deposition would serve as an acceptable substitute for live testimony. Docket No. 64 at 13–14, *see Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000) (citing *United States v. Tunnell*, 667 F.2d 1182, 1188 (5th Cir. 1982)). While there is some benefit to providing live witnesses at trial, the Court is not convinced that using the non-party witnesses' deposition as opposed to live

---

[2] Dell identifies two third-party witnesses by name in its reply brief. Docket No. 109 at 3. The two witnesses are located in the N.D. Cal. *Id.*

testimony at trial would seriously inconvenience Dell or NDT. *See In re Genentech*, 566 F.3d at 1346 ("The Supreme Court has long held that § 1404(a) requires individualized, case-by-case consideration of convenience and fairness.") (internal quotation omitted). If the parties know beforehand that depositions will be used at trial, any inconvenience of not having the witnesses appear live is reduced even further. Separately, Dell has not addressed how the indemnification agreement factors into this analysis. Thus, this factor is neutral.

### iii. *The Cost of Attendance of Willing Witnesses*

In analyzing this factor, all parties and witnesses must be considered. *Volkswagen I*, 371 F.3d at 204. District courts should assess the relevance and materiality of the information the witness may provide, but there is no requirement that the movant demonstrate that the witness has anything more than relevant and material information. *In re Genentech, Inc.*, 566 at 1343–44.

The Fifth Circuit established a "100 mile rule" to assist with analysis of this factor. *See In re Volkswagen I*, 371 F.3d at 204–205; *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home …."). The threshold question is whether the transferor and transferee venues are more than 100 miles apart. *See In re Volkswagen II*, 545 F.3d at 217. If so, then a court compares the respective distances between the residences of all the identified material and relevant witnesses and the transferor and transferee venues. *Id.* Transfer is favored if the transferee venue is a shorter average distance from witnesses as compared to the transferor venue. *See id.*

Dell argues that this factor favors transfer. Docket No. 64 at 15. Dell states that third-party witnesses are located within 100 miles to the district courthouse in San Francisco, making

8

the N.D. Cal. more convenient for third-party witnesses. *Id.* Dell argues that travel to San Francisco is more convenient than travel to Marshall for its witnesses in Round Rock, Texas because of daily non-stop flights from Austin to San Francisco. *Id.* NDT argues that both sides' party witnesses are from Texas, making the E.D. Tex. is clearly more convenient than the N.D. Cal. *Id.* at 7.

In sum, potential witnesses exist within or near both the N.D. Cal. and the E.D. Tex. It is unclear whether Dell's unidentified third-party witnesses are willing or not. On balance, party witnesses are located in Texas, while non-party witnesses are generally in California. Accordingly, this factor weighs slightly against transfer.

### iv. *Other Practical Problems*

Practical problems include those related to judicial economy. In particular, multiple suits involving the same or similar issues may create practical problems that will weigh in favor of or against transfer. *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Additionally, co-pending litigation before the court involving the same patent and underlying technology provides a substantial justification for maintaining the suit in the transferor venue. *Id.*

Dell contends that despite other pending actions involving the Asserted Patents within the E.D. Tex., this factor strongly favors transfer given the early state of the case, and that NDT has other pending lawsuits involving the Asserted Patents in the C.D. Cal. Docket No. 64 at 16. NDT responds that judicial economy weighs heavily against transfer because transfer to the N.D. Cal. will result in a third court being involved with the Asserted Patents, which will waste judicial resources and enhance NDT's risk of inconsistent claim constructions. Docket No. 98 at 8.

At the time of filing, there were multiple related actions[3] pending in the E.D. Tex. and the C.D. Cal., and none in the N.D. Cal. The Court sees no reason—based on judicial economy—to add a third court involved with the Asserted Patents. Accordingly, this factor strongly disfavors transfer.

### B. Public Interest Factors

Dell maintains that all of the public interest factors are neutral except local interest. Docket No. 64 at 17. NDT contends that the local interest and court congestion factors weigh against transfer and the remaining two factors—familiarity with the relevant law and avoiding unnecessary conflicts of law—are neutral. Docket No. 98 at 10.

#### i. *The Local Interest in Having Localized Interests Decided at Home*

The Fifth Circuit explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206. Interests that could apply to any district in the United States, for example the sale of infringing products, are disregarded in favor of particularized local interest. *In re Volkswagen II*, 545 F.3d at 218. Local interests may favor transfer when the transferee venue is home to a party because the suit may call into question the reputation of individuals that work and conduct business in the community. *See Hoffman-La Roche*, 587 F.3d at 1336.

Dell contends that the E.D. Tex. has no local interest in this case, and the N.D. Cal. "has a strong and particularized local interest" because of the third-parties involved in this case. Docket No. 64 at 17. Dell argues that NDT's ties to Texas should not be given consideration because they are "thin." Docket No. 109 at 5. NDT responds that it is "absurd and inaccurate" for Dell to argue that the E.D. Tex. has no interest in this litigation given Dell's presence in Texas—specifically in Round Rock and Plano. Docket No. 98 at 10.

---

[3] Currently, there is only one related action in the E.D. Tex.

Given that Dell maintains its headquarters in Round Rock and has an office in Plano, it is somewhat disingenuous for Dell to argue the E.D. Tex. has "no connection" or interest to this litigation. Ignoring Dell's attempt to mischaracterize this factor, the fact remains that the N.D. Cal. is not home to either party involved in this litigation. Accordingly, this factor weighs against transfer.

### ii. *Administrative Difficulties Flowing from Court Congestion*

Dell does not dispute NDT's assertion that the E.D. Tex. will likely resolve this case faster than the N.D. Cal. Accordingly, this factor disfavors transfer.

### iii. *The Remaining Public Interest Factors*

The parties maintain that the familiarity with the relevant law and avoiding unnecessary conflicts of law are neutral. Docket Nos. 64 at 17 and 98 at 10.

## CONCLUSION

For the reasons stated above, Dell failed to establish that the Northern District of California is a clearly more convenient forum. Based on the evidence presented, five convenience factors weigh against transfer, and three factors are neutral. Thus, Dell has not proved that the Northern District of California is clearly more convenient. Accordingly, the Court **DENIES** Defendant Dell, Inc.'s Motion to Transfer (Docket No. 64).[4]

---

[4] On August 20, 2015, Dell filed a Petition for Writ of Mandamus for failure to rule on this motion (Docket No. 179). The Court has been working diligently on this motion for the last several weeks. On August 10, 2015, Dell's counsel contacted the Court to inquire about the status of its motion to transfer. Dell's counsel was informed the Court was aware of the motion and was working toward providing a ruling within two weeks, despite preparing for and being in trial from August 17, 2015 to August 21, 2015. A three-month delay after the completion of briefing does not seem unreasonable given that Dell waited six months to file its initial motion and did not oppose a two-month extension for NDT to respond. *See*, Docket No. 74. The Court notes that the schedule governing this case has been in place since November 21, 2014, and that Dell could have requested a stay of any of the previous deadlines—or discovery, for that matter—pending a ruling on its motion. When Dell filed its petition, the Court became faced with a dilemma. The Court was ready to issue this Order, but did not want to appear disrespectful to the Federal Circuit, given the pending petition. Similarly, the Court did not want to encourage the filing of petitions by giving the impression that doing so is a way to get the Court to rule quickly on an underlying motion. At the end of the day, the merits, rather than appearances, should guide the Court's actions. Therefore, the Court managed its docket as normal, and issued this Order in due course.

**So ORDERED and SIGNED this 25th day of August, 2015.**

						ROBERT W. SCHROEDER III
						UNITED STATES DISTRICT JUDGE